UNITED STATES DISTRICT COURT
Eastern District of Michigan
Southern Division

JOHN SECREST, as Personal Representative
of the ESTATE OF RICHARD SECREST, deceased.

      Plaintiff,                                Case No.
                                              Hon.

v

UNITED STATES OF AMERICA,
VETERANS AFFAIRS ANN ARBOR HEALTHCARE SYSTEM,
SAMEER SAINI, M.D., JOHN WILEY, M.D.
TIMOTHY FRANKEL, M.D., AND ROBERT O'ROURKE, M.D.

      Defendants.

_____/

## **COMPLAINT**

NOW COMES, the Plaintiff, John Secrest, as Personal Representative of the Estate of Richard Secrest, by and through his attorneys, JOHNSON LAW, PLC, and for his complaint and cause of action against the above-captioned Defendants, states the following:

1.    At all times herein, the plaintiff, John Secrest, was a resident of the County of Martin, State of Florida. The plaintiff was duly appointed as the Personal Representative of the Estate of Richard Secrest on February 5, 2021, in the probate court, Lenawee County, State of Michigan.

2.    At all times herein, VA Ann Arbor Health Care System (hereinafter "VA Ann Arbor" or "AAVA") was a medical facility located in the City of Ann

Arbor, County of Washtenaw, State of Michigan, and was organized and administered by the United States Department of Veterans Affairs, a governmental unit of defendant, UNITED STATES OF AMERICA.

3.     At all times herein, the defendant, Sameer Saini, M.D., was a board-certified gastroenterologist practicing medicine at the VA Ann Arbor in the County of Washtenaw, State of Michigan.  Dr. Saini was within the course and scope of his employment with VA Ann Arbor when he treated Richard Secrest and, therefore, defendants, UNITED STATES OF AMERICA, and VETERANS AFFAIRS ANN ARBOR HEALTHCARE SYSTEM are vicariously liable for negligent acts or omissions of Dr. Saini.

4.     At all times herein, the defendant, John Wiley, M.D., was a board-certified gastroenterologist practicing medicine at the VA Ann Arbor in the County of Washtenaw, State of Michigan. Dr. Wiley was within the course and scope of his employment with VA Ann Arbor when he treated Richard Secrest and, therefore, defendants, UNITED STATES OF AMERICA, and VETERANS AFFAIRS ANN ARBOR HEALTHCARE SYSTEM are vicariously liable for negligent acts or omissions of Dr. Wiley.

5.     At all times herein, the defendant, Timothy Frankel, M.D., was a board-certified general surgeon practicing medicine at the VA Ann Arbor in the County of Washtenaw, State of Michigan. Dr. Frankel was within the course and scope of his

employment with VA Ann Arbor when he treated Richard Secrest and, therefore, defendants, UNITED STATES OF AMERICA, and VETERANS AFFAIRS ANN ARBOR HEALTHCARE SYSTEM are vicariously liable for negligent acts or omissions of Dr. Frankel.

6.      At all times herein, the defendant, Robert O'Rourke, M.D., was a board-certified general surgeon practicing medicine at the VA Ann Arbor in the County of Washtenaw, State of Michigan. Dr. O'Rourke was within the course and scope of his employment with VA Ann Arbor when he treated Richard Secrest and, therefore, defendants, UNITED STATES OF AMERICA, and VETERANS AFFAIRS ANN ARBOR HEALTHCARE SYSTEM are vicariously liable for negligent acts or omissions of Dr. O'Rourke.

7.      This cause of action is within the ambit of the Federal Tort Claims Act, 28 USC  Pt. VI, Chapter 171 *et seq*, and 28 USC § 1346 which vest exclusive jurisdiction over the action within the United States District Court.

8.      Jurisdiction and venue are properly vested within this Court.

## STATEMENT OF FACTS

In paragraphs 9-22, as set forth below, the plaintiff makes reference to statements contained in decedent's medical records. The recitations of these factual statements shall not be construed as admission as to the factual authenticity or

truthfulness of these statements as they are referenced to provide context as to the violations of the standard of care set forth below.

9.     On November 10, 2020, Richard presented to Fulton County Hospital with rectal bleeding and abdominal pain. That same day, Richard had a CT with findings consistent with gallbladder carcinoma associated with hepatic metastasis. Mucosal edema of second portion of duodenum and possible partial duodenal obstruction by direct extension of mass with moderate grade gastric outlet obstruction. Probable cholelithiasis. Mucosal thickening of distal esophagus, minimal linear atelectasis and/or scarring at lung base, left adrenal nodule too small to characterize, simple left renal cortical cyst.

10.     On November 11, 2020, Richard was transferred to VA Ann Arbor Healthcare System ("AAVA") where he was admitted with abdominal pain and gallbladder inflammation. The reason for transfer is listed as "New metastatic malignancy, possible partial SBO, possible GI bleed". The "Physician Admission Evaluation" note states that Richard "presented to Fulton County Hospital ED with abdominal pain w/ bilateral upper abdominal pain for half a year which worsened in the last 3 days". Richard was given IVF, morphine 2mg IV x2, Pantoprazole 40mg IV x1 and Toradol 30mg IV x1. Upon arrival at AAVA Richard described pain worsened during meals and improves with Protonix. Richard reported pain, nausea, dyspepsia and dysphagia, which he described as a feeling of food getting stuck in

4

his throat. Richard also described rectal bleeding for the past three days which had been largely mixed with his stool.

11.    On November 12, 2020, an addendum by internal medicine attending, Dr. Paul Christine, stated that Richard's "abdominal pain and CT findings [are] unclear. Malignancy is certainly a possibility, with gallbladder adenocarcinoma, cholangiocarcinoma, or metastatic disease all being possibilities. Other considerations include infectious etiologies such as hepatic abscess, though he has no evidence of infection at this time. Infiltrative disease seems less likely given the discrete liver lesion and gallbladder findings. Our plan is to repeat CT chest/abdomen/pelvis and to consult GI for consideration of endoscopic evaluation. Ultimately, a tissue diagnosis will likely be necessary, and CT will allow us to see if any other site is amenable to biopsy." The CT of Richard's abdomen and pelvis was performed that day, November 12, 2020, which revealed the following:

> Marked gallbladder wall thickening with wall discontinuity/irregularity, mucosal hyperenhancement, and large gallstone at gallbladder neck. Infiltration of right and medial left hepatic lobes with 2.6cm lesion in medial left hepatic lobe. Findings favored to reflect gangrenous or xanthogranulomatous cholecystitis with hepatic abscess, however a gallbladder neoplasm with hepatic infiltration could have similar appearance.

> Enlarged portacaval lymph node and additional prominent, nonenlarged upper abdominal lymph nodes are nonspecific.

12.    That same day, November 12, 2020, Richard had a gastroenterology consult with Dr. Sameer Saini who recommended IR biopsy of the liver lesion for

tissue diagnosis and a general surgery consult. Dr. Saini also recommended observing the patient's Hb and monitor for any sign of bleeding recurrence. No surgery, endoscopy, or other imaging was ordered.

13.     On November 13, 2020, Dr. Saini made the same recommendation for a general surgery consult, IR biopsy of the liver lesion, and observing Hb for signs of bleeding. That same day, around 3:13pm, Richard reported 10/10 pain in his abdomen with difficulty catching his breath with feeling of heavy pressure. Dr. Timothy Frankel, surgery attending, consulted to weigh in on the possible gallbladder mass vs xanthogranulomatous cholecystitis with nearby liver mass/abscess. Dr. Frankel agreed with pursuing the IR biopsy for further clarity of the diagnosis, 2 weeks of antibiotics and follow up with biopsy results with a 4 week follow up appointment and repeat CT at that time. That night, on November 13, 2020, Richard still had pain of 9/10 at 8:00pm and 10/10 at 9:00pm in his abdomen.

14.     On November 14, 2020, Dr. Robert O'Rourke, general surgery attending, noted "increased WBC to 16 and worsening RUQ pain". Dr. O'Rourke prescribed Richard Zosyn, made an order for NPO, and transitioned to IV PPI. That same day, November 14, 2020, Richard had an internal medicine consult with Dr. Christine who noted that Richard had a surgery consult regarding the need for emergent cholecystitis, was evaluated and was recommended only to continue

antibiotics and fluids with no emergent need for cholecystectomy. Richard's pain continued to range from 5/10 at 4:37pm to 1/10 at 9:52pm that day.

15.     One day later, November 15, 2020, Richard had 1/10 pain at 8:06am. That same day, Richard had another general surgery consult with Dr. Frankel who noted that they would "proceed with the planned liver biopsy on November 16, 2020" and "plan for a follow up in the clinic in two weeks with a repeat CT scan prior to the appointment". Also, that day, a gastroenterology consult was completed by Dr. Anand Venugopal, who recommended follow up IR aspiration/biopsy and follow up on MRCP with need for discussion for ERCP. Richard also had another internal medicine consult with Dr. Christine who noted that Richard had a general surgery consult and was considering outpatient cholecystectomy pending IR biopsy with GI consulted for a possible ERCP. Richard reported improvement in pain with minimal upper right quadrant tenderness at that time. However, by 11:06pm that night, Richard still reported pain of 5/10.

16.     The next day, November 16, 2020, now six days after admission to AAVA, Richard underwent an ultrasound-guided core biopsy of a left hepatic lobe lesion with multiple cores sent to pathology and microbiology. He also had an infectious disease consult with Dr. Vincent Young. Dr. Young noted that findings thus far favored gangrenous or xanthogranulomatous cholecystitis with hepatic abscess, but could not rule out malignancy. He recommended to await the results of

the liver biopsy and maintain Zosyn. That same day, Dr. Frankel noted that they will delay operative intervention to outpatient setting given severe inflammation but stable/asymptomatic clinical picture. Dr. Frankel recommended a follow up appointment two weeks after discharge with repeat CT prior to the appointment. Richard continued to report pain of 2/10 at 9:46pm that night.

17.    On November 17, 2020, Dr. Govind Warrier, Internal Medicine, noted that Richard had "bandlike upper abdominal pain" the night before. Dr. Warrier's note states that Richard "has been evaluated by general surgery, who believe it is more appropriate to do cholecystectomy in the outpatient setting after inflammation has resolved. However, will need source control for his infection prior to discharge, likely either via ERCP vs perc chole tube if GI determines him to not be an ERCP candidate, and will plan to continue Zosyn until we have source control." That same day, November 17, 2020, Dr. John Wiley, gastroenterology attending, noted that he "discussed case with advanced endoscopy attending who notes that it is not possible to remove the stone from the gallbladder neck via ERCP. Although EUS drainage of the gallbladder is feasible, this is typically a destination therapy". Dr. Wiley also noted that "surgery does not wish to perform [gallbladder] surgery until inflammation decreased, plan for an outpatient procedure". Dr. Wiley recommended to "discuss with surgery whether PTC tube or antibiotics are adequate for cholecystitis that is too severe to be managed operatively in an acute setting".

8

18.     On November 18, 2020, Richard reported pain of 2/10 at 8:25am. That same day, Dr. Frankel noted "likely xanthogranulomatous cholecystitis with liver abscess (s/p IR biopsy on 11/16)". Dr. Frankel planned for outpatient cholecystectomy pending repeat scan in three weeks and outpatient appointment now being planned after four-week course of antibiotics.

19.     Although Richard was not improving, he was discharged the next day, November 19, 2020. The discharge summary lists "Acute on chronic cholecystitis" as the diagnosis with "upper GI bleeding (present at admission)" as the secondary diagnosis. The discharge summary states that general surgery determined the best course was to schedule outpatient cholecystectomy for suspicion of acute on chronic cholecystitis with possible xanthogranulomatous cholecystitis in three weeks after discharge and general surgery/gastroenterology recommended no ERCP with stent placement or percutaneous cholecystostomy at this time. Infectious disease recommended discharge on Augmentin for outpatient control until cholecystectomy. Richard was told that general surgery would reach out to him to schedule a follow-up to remove his gallbladder in 3-4 weeks.

20.     On November 20, 2020, a nursing discharge note stated that Paul Hepfinger, RN spoke with Richard, and he indicated pain of 10/10, mentioned that he didn't have enough medication to last until surgery, and wanted doctors to contact him regarding black stools, pain, and having his gallbladder removed sooner than

three weeks. He was scheduled for a televisit on December 1, 2020, at 1:00pm, 12 days later. In an addendum to this November 20, 2020, note, it appears that Dr. Warrier also attempted to contact Richard for concern with "ongoing known cholecystitis but suspicion also raised for possible GI bleed vs. choledocholithiasis vs. cholangitis. Our team will continue to try to reach patient with recommendation to present to AAVA ED should history indicate worsening symptoms. Alternatively, if all symptoms appear to be stable or improved since time of discharge, will attempt to expedite outpatient follow-up". However, outpatient follow-up was never expedited.

21.    Five days later, on November 25, 2020, Richard called AAVA to request renewal of medication. Then on six days later, on December 1, 2020, Richard had his televisit where he described episodes of cramping pain. The televisit note states that no fluid was able to be aspirated from the 11/16 liver mass biopsy, but pathology was negative for malignancy noting hepatic tissue with acute and chronic inflammation and abscess. No special staining was done to look for organisms. The plan continued to be outpatient cholecystectomy in three weeks with CT of the abdomen in two weeks. This would mean the cholecystectomy was not being planned until around December 21, 2020, nearly a month-and-a-half after Richard's admission to AAVA on November 10, 2020.

22.    The next day, Richard had a nutritional consult for "preop surgery" and reported "significant pain after coming home [from hospital]". Five days later, on December 10, 2020, Richard died in his home. The cause of death was listed as "Calculous Cholecystitis" on the death certificate and the autopsy completed by Lenawee County forensic pathologist, Dr. Bader Cassin, stated that "[d]eath was caused by acute gastrointestinal hemorrhage associated with ruptured calculous cholecystitis. There was chronic inflammation of the gallbladder with a large impacted stone resulting in ulceration and hemorrhage into the gastrointestinal tract."  Richard had approximately 400 ml. of dark red partially clotted blood in his stomach and 80 ml. of soft-clotted blood in his duodenum.

### COUNT I – MEDICAL MALPRACTICE – SAMEER SAINI, M.D.

The plaintiff hereby restates, realleges, and incorporates by reference each and every paragraph stated above as though fully stated herein.

23.    At all times relevant herein, the standard of care applicable to Sameer Saini, M.D., required him to maintain the standard of care of his peers within the professional community of gastroenterologists.

24.    At all times relevant herein, the requirements of the standard of care included, but were not limited to, the following:

       a. Upon transfer to AAVA with information and CT results from Fulton County Hospital confirming that Richard suffered from gallbladder inflammation and GI bleed on November 11, 2020, appropriately and

11

timely recognize, diagnose and/or treat signs and symptoms of emergent calculus cholecystitis, GI bleed, and infection;

b. Upon transfer to AAVA with information and CT results from Fulton County Hospital confirming that Richard suffered from gallbladder inflammation and GI bleed on November 11, 2020, and having the first GI consult on November 12, 2020, order appropriate testing and perform appropriate procedures;

c. Direct and/or recommend surgery or otherwise take affirmative steps to ensure performance of an emergent cholecystectomy with a drainage of the liver abscess prior to prematurely discharging Richard on November 19, 2020;

d. Keep Richard in-patient at AAVA from November 11, 2020, until after surgery is completed instead of prematurely discharging Richard November 19, 2020, and inform Richard of same; and

e. Any and all other breaches of the standard of practice or care that may be determined during discovery.

25.    At all times relevant herein, Dr. Saini breached the applicable standard of care in the manner set forth below:

a. Upon transfer to AAVA with information and CT results from Fulton County Hospital confirming that Richard suffered from gallbladder inflammation and GI bleed on November 11, 2020, failed to appropriately and timely recognize, diagnose and/or treat signs and symptoms of emergent calculus cholecystitis, GI bleed, and infection;

b. Upon transfer to AAVA with information and CT results from Fulton County Hospital confirming that Richard suffered from gallbladder inflammation and GI bleed on November 11, 2020, and having the first GI consult on November 12, 2020, failed to order appropriate testing and perform appropriate procedures;

c. Failed to direct/recommend surgery or otherwise take affirmative steps to ensure performance of an emergent cholecystectomy with a drainage

of the liver abscess prior to prematurely discharging Richard on November 19, 2020;

d. Failed to keep Richard in-patient at AAVA from November 11, 2020, until after surgery is completed instead of prematurely discharging Richard November 19, 2020, and inform Richard of same; and

e. Any and all other breaches of the standard of practice or care that may be determined during discovery.

26.    At all times relevant herein, Dr. Saini was required to take the following steps to achieve compliance with the applicable standard of care:

a. Upon transfer to AAVA with information and CT results from Fulton County Hospital confirming that Richard suffered from gallbladder inflammation and GI bleed on November 11, 2020, should have appropriately and timely recognized, diagnosed and/or treated signs and symptoms of emergent calculous cholecystitis, GI bleed, and infection;

b. Upon transfer to AAVA with information and CT results from Fulton County Hospital confirming that Richard suffered from gallbladder inflammation and GI bleed on November 11, 2020, and having the first GI consult on November 12, 2020, should have ordered appropriate testing and performed appropriate procedures;

c. Should have directed and/or recommended surgery or otherwise take affirmative steps to ensure performance of an emergent cholecystectomy with a drainage of the liver abscess prior to prematurely discharging Richard on November 19, 2020;

d. Should have kept Richard in-patient at AAVA from November 11, 2020, until after surgery was completed instead of prematurely discharging him. Richard November 19, 2020, and inform Richard of same; and

e. Any and all other breaches of the standard of practice or care that may be determined during discovery.

13

27.     Had Dr. Saini taken the steps identified in paragraph 26 including, but not limited to continuously evaluating the patient for symptoms of rupture and associated sepsis and GI hemorrhage, ordered an upper endoscopy, ordered an emergent cholecystectomy and/or surgery to remove fluids from the gallbladder, and refrained from discharging the patient until his clinical condition improved, Mr. Secrest would not have prematurely died.

28.     As a direct and proximate result of each breach of the standard of care as outlined above, Mr. Secrest expired on December 10, 2020.  An autopsy was performed, and the cause of death was listed as acute gastrointestinal hemorrhage associated with ruptured calculous cholecystitis. Accordingly, the plaintiff is entitled to all damages recoverable under the law including, but not limited to, reasonable compensation for the pain and suffering incurred by Mr. Secrest prior to his death; loss of society and companionship suffered by members of his estate; loss of wages and financial support; loss of earnings; all necessary and reasonable medical expenses; and funeral and burial expenses.

29.     An affidavit of merit of Frederic Wein, M.D., gastroenterologist supporting the claim is attached hereto with the complaint. (Exhibit 1).

WHEREFORE, the Plaintiff respectfully requests this Honorable Court to enter a judgment against the Defendants, jointly and severally, in the amount of $5,000,000.00 exclusive of interest, costs, and attorney fee.

## COUNT II – MEDICAL MALPRACTICE – JOHN WILEY, M.D.

The plaintiff hereby restates, realleges, and incorporates by reference each and every paragraph stated above as though fully stated herein.

30.     At all times relevant herein, the standard of care applicable to John Wiley, M.D., required him to maintain the standard of care of his peers within the professional community of gastroenterologists.

31.     At all times relevant herein, the requirements of the standard of care included, but were not limited to, the following:

    a.  Upon transfer to AAVA with information and CT results from Fulton County Hospital confirming that Richard suffered from gallbladder inflammation and GI bleed on November 11, 2020, appropriately and timely recognize, diagnose and/or treat signs and symptoms of emergent calculous cholecystitis, GI bleed, and infection;

    b.  Upon transfer to AAVA with information and CT results from Fulton County Hospital confirming that Richard suffered from gallbladder inflammation and GI bleed on November 11, 2020, and having the first GI consult on November 12, 2020, order appropriate testing and perform appropriate procedures;

    c.  Direct and/or recommend surgery or otherwise take affirmative steps to ensure performance of an emergent cholecystectomy with a drainage of the liver abscess prior to prematurely discharging Richard on November 19, 2020;

    d.  Keep Richard in-patient at AAVA from November 11, 2020, until after surgery is completed instead of prematurely discharging Richard November 19, 2020, and inform Richard of same; and

    e.  Any and all other breaches of the standard of practice or care that may be determined during discovery.

32.     At all times relevant herein, Dr. Wiley breached the applicable standard

of care in the manner set forth below:

    a.  Upon transfer to AAVA with information and CT results from Fulton County Hospital confirming that Richard suffered from gallbladder inflammation and GI bleed on November 11, 2020, failed to appropriately and timely recognize, diagnose and/or treat signs and symptoms of emergent calculus cholecystitis, GI bleed, and infection;

    b.  Upon transfer to AAVA with information and CT results from Fulton County Hospital confirming that Richard suffered from gallbladder inflammation and GI bleed on November 11, 2020, and having the first GI consult on November 12, 2020, failed to order appropriate testing and perform appropriate procedures;

    c.  Failed to direct/recommend surgery or otherwise take affirmative steps to ensure performance of an emergent cholecystectomy with a drainage of the liver abscess prior to prematurely discharging Richard on November 19, 2020;

    d.  Failed to keep Richard in-patient at AAVA from November 11, 2020, until after surgery is completed instead of prematurely discharging Richard November 19, 2020, and inform Richard of same; and

    e.  Any and all other breaches of the standard of practice or care that may be determined during discovery.

33.     At all times relevant herein, Dr. Wiley was required to take the

following steps to achieve compliance with the applicable standard of care:

    a.  Upon transfer to AAVA with information and CT results from Fulton County Hospital confirming that Richard suffered from gallbladder inflammation and GI bleed on November 11, 2020, should have appropriately and timely recognized, diagnosed and/or treated signs and symptoms of emergent calculus cholecystitis, GI bleed, and infection;

    b.   Upon transfer to AAVA with information and CT results from Fulton County Hospital confirming that Richard suffered from gallbladder inflammation and GI bleed on November 11, 2020, and having the first GI consult on November 12, 2020, should have ordered appropriate testing and performed appropriate procedures;

    c.   Should have directed and/or recommended surgery or otherwise take affirmative steps to ensure performance of an emergent cholecystectomy with a drainage of the liver abscess prior to prematurely discharging Richard on November 19, 2020;

    d.   Should have kept Richard in-patient at AAVA from November 11, 2020, until after surgery was completed instead of prematurely discharging him. Richard November 19, 2020, and inform Richard of same; and

    e.   Any and all other breaches of the standard of practice or care that may be determined during discovery.

34.    Had Dr. Wiley taken the steps identified in paragraph 33 including, but not limited to continuously evaluating the patient for symptoms of rupture and associated sepsis and GI hemorrhage, ordered an upper endoscopy, ordered an emergent cholecystectomy and/or surgery to remove fluids from the gallbladder, and refrained from discharging the patient until his clinical condition improved, Mr. Secrest would not have prematurely died.

35.    As a direct and proximate result of each breach of the standard of care as outlined above, Mr. Secrest expired on December 10, 2020.  An autopsy was performed, and the cause of death was listed as acute gastrointestinal hemorrhage associated with ruptured calculous cholecystitis. Accordingly, the plaintiff is entitled to all damages recoverable under the law including, but not limited to, reasonable

compensation for the pain and suffering incurred by Mr. Secrest prior to his death; loss of society and companionship suffered by members of his estate; loss of wages and financial support; loss of earnings; all necessary and reasonable medical expenses; and funeral and burial expenses.

36.    An affidavit of merit of Frederic Wein, M.D., gastroenterologist supporting the claim is attached hereto with the complaint. (Exhibit 1).

WHEREFORE, the Plaintiff respectfully requests this Honorable Court to enter a judgment against the Defendants, jointly and severally, in the amount of $5,000,000.00 exclusive of interest, costs, and attorney fee.

**COUNT III – MEDICAL MALPRACTICE – TIMOTHY FRANKEL, M.D.**

The plaintiff hereby restates, realleges, and incorporates by reference each and every paragraph stated above as though fully stated herein.

37.    At all times relevant herein, the standard of care applicable to Timothy Frankel, M.D., required him to maintain the standard of care of his peers within the professional community of general surgeons.

38.    At all times relevant herein, the requirements of the standard of care included, but were not limited to, the following:

   a. Upon transfer to AAVA with information and CT results from Fulton County Hospital confirming that Richard suffered from gallbladder inflammation and GI bleed on November 11, 2020, appropriately and timely recognize, diagnose and/or treat signs and symptoms of emergent calculous cholecystitis, GI bleed, and infection;

b. Upon transfer to AAVA with information and CT results from Fulton County Hospital confirming that Richard suffered from gallbladder inflammation and GI bleed on November 11, 2020, order appropriate testing and perform appropriate procedures;

c. Prior to discharge on November 19, 2020, perform an emergent cholecystectomy with a drainage of the liver abscess, placed Cholecystostomy tube, or, if necessary, refer for emergency surgery and transport by ambulance to another facility that has capability for the surgery;

d. Keep Richard in-patient at AAVA from November 11, 2020, until after surgery is completed instead of prematurely discharging Richard November 19, 2020, and inform Richard of same; and

e. Any and all other breaches of the standard of practice or care that may be determined during discovery.

39. At all times relevant herein, Dr. Frankel breached the standard of care in the manner set forth below:

a. Upon transfer to AAVA with information and CT results from Fulton County Hospital confirming that Richard suffered from gallbladder inflammation and GI bleed on November 11, 2020, failed to appropriately and timely recognize, diagnose and/or treat signs and symptoms of emergent calculous cholecystitis, GI bleed, and infection;

b. Upon transfer to AAVA with information and CT results from Fulton County Hospital confirming that Richard suffered from gallbladder inflammation and GI bleed on November 11, 2020, failed to order appropriate testing and perform appropriate procedures;

c. Prior to discharge on November 19, 2020, failed to perform an emergent cholecystectomy with a drainage of the liver abscess, placed Cholecystostomy tube, or, if necessary, refer for emergency surgery and transport by ambulance to another facility that has capability for the surgery;

      d. Failed to keep Richard in-patient at AAVA from November 11, 2020, until after surgery is completed instead of prematurely discharging Richard November 19, 2020, and inform Richard of same; and

      e. Any and all other breaches of the standard of practice or care that may be determined during discovery.

40.    At all times relevant herein, Dr. Frankel should have taken the following steps to achieve compliance with the applicable standard of care:

      a. Upon transfer to AAVA with information and CT results from Fulton County Hospital confirming that Richard suffered from gallbladder inflammation and GI bleed on November 11, 2020, should have appropriately and timely recognized, diagnosed and/or treated signs and symptoms of emergent calculous cholecystitis, GI bleed, and infection;

      b. Upon transfer to AAVA with information and CT results from Fulton County Hospital confirming that Richard suffered from gallbladder inflammation and GI bleed on November 11, 2020, should have ordered appropriate testing and performed appropriate procedures;

      c. Prior to discharge on November 19, 2020, should have performed an emergent cholecystectomy with a drainage of the liver abscess, placed Cholecystostomy tube, or, if necessary, refer for emergency surgery and transport by ambulance to another facility that has capability for the surgery;

      d. Should have kept Richard in-patient at AAVA from November 11, 2020, until after surgery was completed instead of prematurely discharging him. Richard November 19, 2020, and inform Richard of same; and

      e. Any and all other breaches of the standard of practice or care that may be determined during discovery.

41.    Had Dr. Frankel taken the steps identified in paragraph 40 including, but not limited to continuously evaluating the patient for symptoms of rupture and

associated sepsis and GI hemorrhage, ordered an emergent cholecystectomy and/or surgery to remove fluids from the gallbladder, placing a cholecystostomy tube, and refrained from discharging the patient until his clinical condition improved, Mr. Secrest would not have prematurely died.

42.     As a direct and proximate result of each breach of the standard of care as outlined above, Mr. Secrest expired on December 10, 2020.  An autopsy was performed, and the cause of death was listed as acute gastrointestinal hemorrhage associated with ruptured calculous cholecystitis. Accordingly, the plaintiff is entitled to all damages recoverable under the law including, but not limited to, reasonable compensation for the pain and suffering incurred by Mr. Secrest prior to his death; loss of society and companionship suffered by members of his estate; loss of wages and financial support; loss of earnings; all necessary and reasonable medical expenses; and funeral and burial expenses.

43.     An affidavit of merit from Paul VonRyll Gryska, M.D., general surgeon, supporting the claim is attached hereto. (Exhibit 2).

WHEREFORE, the Plaintiff respectfully requests this Honorable Court to enter a judgment against the Defendants, jointly and severally, in the amount of $5,000,000.00 exclusive of interest, costs, and attorney fee.

**COUNT IV – MEDICAL MALPRACTICE – ROBERT O'ROURKE, M.D.**

The plaintiff hereby restates, realleges, and incorporates by reference each and every paragraph stated above as though fully stated herein.

44.    At all times relevant herein, the standard of care applicable to Robert O'Rourke, M.D., required him to maintain the standard of care of his peers within the professional community of general surgeons.

45.    At all times relevant herein, the requirements of the standard of care included, but were not limited to, the following:

a.    Upon transfer to AAVA with information and CT results from Fulton County Hospital confirming that Richard suffered from gallbladder inflammation and GI bleed on November 11, 2020, appropriately and timely recognize, diagnose and/or treat signs and symptoms of emergent calculous cholecystitis, GI bleed, and infection;

b.    Upon transfer to AAVA with information and CT results from Fulton County Hospital confirming that Richard suffered from gallbladder inflammation and GI bleed on November 11, 2020, order appropriate testing and perform appropriate procedures;

c.    Prior to discharge on November 19, 2020, perform an emergent cholecystectomy with a drainage of the liver abscess, placed Cholecystostomy tube, or, if necessary, refer for emergency surgery and transport by ambulance to another facility that has capability for the surgery;

d.    Keep Richard in-patient at AAVA from November 11, 2020, until after surgery is completed instead of prematurely discharging Richard November 19, 2020, and inform Richard of same; and

e.    Any and all other breaches of the standard of practice or care that may be determined during discovery.

46.    At all times relevant herein, Dr. O'Rourke breached the standard of care

in the manner set forth below:

    a.  Upon transfer to AAVA with information and CT results from Fulton County Hospital confirming that Richard suffered from gallbladder inflammation and GI bleed on November 11, 2020, failed to appropriately and timely recognize, diagnose and/or treat signs and symptoms of emergent calculous cholecystitis, GI bleed, and infection;

    b.  Upon transfer to AAVA with information and CT results from Fulton County Hospital confirming that Richard suffered from gallbladder inflammation and GI bleed on November 11, 2020, failed to order appropriate testing and perform appropriate procedures;

    c.  Prior to discharge on November 19, 2020, failed to perform an emergent cholecystectomy with a drainage of the liver abscess, placed Cholecystostomy tube, or, if necessary, refer for emergency surgery and transport by ambulance to another facility that has capability for the surgery;

    d.  Failed to keep Richard in-patient at AAVA from November 11, 2020, until after surgery is completed instead of prematurely discharging Richard November 19, 2020, and inform Richard of same; and

    e.  Any and all other breaches of the standard of practice or care that may be determined during discovery.

47.    At all times relevant herein, Dr. O'Rourke should have taken the

following steps to achieve compliance with the applicable standard of care:

    a.  Upon transfer to AAVA with information and CT results from Fulton County Hospital confirming that Richard suffered from gallbladder inflammation and GI bleed on November 11, 2020, should have appropriately and timely recognized, diagnosed and/or treated signs and symptoms of emergent calculous cholecystitis, GI bleed, and infection;

b. Upon transfer to AAVA with information and CT results from Fulton County Hospital confirming that Richard suffered from gallbladder inflammation and GI bleed on November 11, 2020, should have ordered appropriate testing and performed appropriate procedures;

c. Prior to discharge on November 19, 2020, should have performed an emergent cholecystectomy with a drainage of the liver abscess, placed Cholecystostomy tube, or, if necessary, refer for emergency surgery and transport by ambulance to another facility that has capability for the surgery;

d. Should have kept Richard in-patient at AAVA from November 11, 2020, until after surgery was completed instead of prematurely discharging him. Richard November 19, 2020, and inform Richard of same; and

e. Any and all other breaches of the standard of practice or care that may be determined during discovery.

48. Had Dr. O'Rourke taken the steps identified in paragraph 40 including, but not limited to continuously evaluating the patient for symptoms of rupture and associated sepsis and GI hemorrhage, ordered an emergent cholecystectomy and/or surgery to remove fluids from the gallbladder, placing a cholecystostomy tube, and refrained from discharging the patient until his clinical condition improved, Mr. Secrest would not have prematurely died.

49. As a direct and proximate result of each breach of the standard of care as outlined above, Mr. Secrest expired on December 10, 2020. An autopsy was performed, and the cause of death was listed as acute gastrointestinal hemorrhage associated with ruptured calculous cholecystitis. Accordingly, the plaintiff is entitled to all damages recoverable under the law including, but not limited to, reasonable

24

compensation for the pain and suffering incurred by Mr. Secrest prior to his death; loss of society and companionship suffered by members of his estate; loss of wages and financial support; loss of earnings; all necessary and reasonable medical expenses; and funeral and burial expenses.

50.    An affidavit of merit from Paul VonRyll Gryska, M.D., general surgeon, supporting the claim is attached hereto. (Exhibit 2).

WHEREFORE, the Plaintiff respectfully requests this Honorable Court to enter a judgment against the Defendants, jointly and severally, in the amount of $5,000,000.00 exclusive of interest, costs, and attorney fee.

## COUNT V – VICARIOUS LIABILITY - UNITED STATES OF AMERICA

The plaintiff hereby restates, realleges, and incorporates by reference each and every paragraph stated above as though fully stated herein.

51.    At all times relevant herein, Dr. Saini, Dr. Wiley, Dr. Frankel, and Dr. O'Rourke were within the course and scope of their employment with VA Ann Arbor when they treated Richard Secrest. Accordingly, defendant, UNITED STATES OF AMERICA, is vicariously liable for their negligent acts or omissions.

WHEREFORE, the Plaintiff respectfully requests this Honorable Court to enter a judgment against the Defendants, jointly and severally, in the amount of $5,000,000.00 exclusive of interest, costs, and attorney fee.

Respectfully submitted,

JOHNSON LAW, PLC

By:    */s/ Ven R. Johnson*
         VEN R. JOHNSON (P39219)
         KANWARPREET S. KHAHRA (P80253)
         Attorneys for Plaintiffs
         535 Griswold St., Suite 2600
         Detroit, MI 48226
         313.324.8300/Fax: 313.324.8301
         kkhahra@venjohnsonlaw.com

Dated: December 2, 2022      vjohnson@venjohnsonlaw.com

# EXHIBIT 1

STATE OF NEW JERSEY                    )

                                       ) ss.

COUNTY OF PASSAIC                      )


### AFFIDAVIT OF MERIT – FREDERIC WIEN, M.D.

I, Frederic Wien, M.D., being first duly sworn, deposes and says:

1. I graduated from the University of Liege with a medical degree in July 1978.

2. Between 1978 and 1981, I completed internal medicine residency from University of Medicine and Dentistry New Jersey (UMDNJ) which included rotations at the University Hospital; East Orange VA Hospital; and Newark Beth Israel Hospital.

3. Between 1981 and 1983, I completed fellowship in gastroenterology from UMDNJ.

4. I am board certified in internal medicine and gastroenterology.

5. I am currently licensed to practice medicine in the State of New Jersey.

6. During the year preceding November 2020, I devoted the majority of my professional time to the active clinical practice of gastroenterology.

7. At the request of attorneys at Johnson Law, PLC, I have reviewed the medical records of Richard Secrest as supplied to me by counsel.

8. I have reviewed the Standard Form 95 and Notice of Intent served pursuant to MCL 600.2912b on behalf of the Estate of Richard Secrest.

9. I affirm that I have personal knowledge of the facts stated in this affidavit.

10. If sworn as a witness, I can testify competently to the facts stated in this affidavit.

11. Based on my review of Mr. Secrest's medical records as supplied to me, I believe there is a reasonable cause for filing a lawsuit. This opinion and the opinions stated below are based upon the information currently available to me. I reserve the right to modify my opinions as additional information becomes available subsequent to the lawsuit of this matter being filed.

12. It is my professional opinion that the standard of care applicable to Sameer Saini, M.D., and John Wiley, M.D., required them to maintain the standard of care of their peers within the professional community of gastroenterologists.

13. It is my professional opinion that the requirements of the standard of care included, but were not limited to, the following:

   a. Upon transfer to AAVA with information and CT results from Fulton County Hospital confirming that Richard suffered from gallbladder inflammation and GI bleed on November 11, 2020, appropriately and timely recognize, diagnose and/or treat signs and symptoms of emergent calculous cholecystitis, GI bleed, and infection;

   b. Upon transfer to AAVA with information and CT results from Fulton County Hospital confirming that Richard suffered from gallbladder inflammation and GI bleed on November 11, 2020, and having the first GI consult on November 12, 2020, order appropriate testing and perform appropriate procedures;

   c. Direct and/or recommend surgery or otherwise take affirmative steps to ensure performance of an emergent cholecystectomy with a drainage of the liver abscess prior to prematurely discharging Richard on November 19, 2020;

      d. Keep Richard in-patient at AAVA from November 11, 2020, until after surgery is completed instead of prematurely discharging Richard November 19, 2020, and inform Richard of same; and

      e. Any and all other breaches of the standard of practice or care that may be determined during discovery.

14. It is my professional opinion that Dr. Saini and Dr. Wiley breached the applicable standard of care in the manner set forth below:

      a. Upon transfer to AAVA with information and CT results from Fulton County Hospital confirming that Richard suffered from gallbladder inflammation and GI bleed on November 11, 2020, failed to appropriately and timely recognize, diagnose and/or treat signs and symptoms of emergent calculous cholecystitis, GI bleed, and infection;

      b. Upon transfer to AAVA with information and CT results from Fulton County Hospital confirming that Richard suffered from gallbladder inflammation and GI bleed on November 11, 2020, and having the first GI consult on November 12, 2020, failed to order appropriate testing and perform appropriate procedures;

      c. Failed to direct/recommend surgery or otherwise take affirmative steps to ensure performance of an emergent cholecystectomy with a drainage of the liver abscess prior to prematurely discharging Richard on November 19, 2020;

      d. Failed to keep Richard in-patient at AAVA from November 11, 2020, until after surgery is completed instead of prematurely discharging Richard November 19, 2020, and inform Richard of same; and

      e. Any and all other breaches of the standard of practice or care that may be determined during discovery.

15. It is my professional opinion that Dr. Saini and Dr. Wiley were required to take the following steps to achieve compliance with the applicable standard of care:

      a. Upon transfer to AAVA with information and CT results from Fulton County Hospital confirming that Richard suffered from gallbladder inflammation and GI bleed on November 11, 2020, should have appropriately and timely recognized, diagnosed and/or treated signs and symptoms of emergent calculous cholecystitis, GI bleed, and infection;

      b. Upon transfer to AAVA with information and CT results from Fulton County Hospital confirming that Richard suffered from gallbladder inflammation and GI bleed on November 11, 2020, and having the first GI consult on November 12, 2020, should have ordered appropriate testing and performed appropriate procedures;

      c. Should have directed and/or recommended surgery or otherwise take affirmative steps to ensure performance of an emergent cholecystectomy with a drainage of the liver abscess prior to prematurely discharging Richard on November 19, 2020;

      d. Should have kept Richard in-patient at AAVA from November 11, 2020, until

after surgery was completed instead of prematurely discharging him. Richard
November 19, 2020, and inform Richard of same; and

e. Any and all other breaches of the standard of practice or care that may be
determined during discovery.

16. It is further my professional opinion to a reasonable degree of medical certainty that
had Dr. Saini and Dr. Wiley taken the steps identified in paragraph 15 including, but not limited
to continuously evaluating the patient for symptoms of rupture and associated sepsis and GI
hemorrhage, ordered an upper endoscopy, ordered an emergent cholecystectomy and/or surgery
to remove fluids from the gallbladder, and refrained from discharging the patient until his clinical
condition improved, Mr. Secrest would not have prematurely died.

17. It is further my professional opinion that as a direct and proximate result of each
breach of the standard of care as outlined above, Mr. Secrest expired on December 10, 2020. An
autopsy was performed, and the cause of death was listed as acute gastrointestinal hemorrhage
associated with ruptured calculous cholecystitis. Accordingly, the plaintiff is entitled to all
damages recoverable under the law including, but not limited to, reasonable compensation for
the pain and suffering incurred by Mr. Secrest prior to his death; loss of society and
companionship suffered by members of his estate; loss of wages and financial support; loss of
earnings; all necessary and reasonable medical expenses; and funeral and burial expenses.

18. The opinions rendered in this affidavit is based on information currently available to
me and based on my education, training, and expertise in the field of gastroenterology and I
reserve the right to modify any opinion should additional information become available through
the course of discovery.

Frederic Wien, M.D., FACP

Subscribed and sworn before me on _25TH Day Of NOVEMBER 2022_

Notary Public

BERGEN County, New Jersey,

My Commission Expires: _JANUARY 27, 2026_



Shaheen H Retiwalla
NOTARY PUBLIC
State of New Jersey
ID # 50149924
My Commission Expires
January 27, 2026

5

# EXHIBIT 2

COMMONWEALTH OF MASSACHUSETTS      )

                                         ) ss.

COUNTY OF MIDDLESEX                     )

### AFFIDAVIT OF MERIT – PAUL VONRYLL GRYSKA, M.D.

I, Paul V. Gryska, M.D., being first duly sworn, deposes and says:

1.      I graduated with a medical degree from the New York University School of Medicine in 1980.

2.      Between 1980 and 1984, I completed a surgical internship and was the assistant resident in Surgery at Massachusetts General Hospital, Boston, MA.

3.      Between 1985 and 1986, I was the chief resident at Massachusetts General Hospital, Boston, MA.

4.      I am board certified in general surgery, having obtained such certification in 1987, recertified in 1996, 2006, 2018, and continue to be so certified today.

5.      I am licensed to practice medicine in the Commonwealth of Massachusetts.

6.      During the year preceding November 2020, I devoted the majority of my professional time to the active clinical practice of general surgery.

7.      At the request of attorneys at Johnson Law, PLC, I have reviewed the medical records of Richard Secrest as supplied to me by counsel.

8.      I have reviewed the Standard Form 95 and Notice of Intent served pursuant to MCL 600.2912b on behalf of the Estate of Richard Secrest.

9.      I have reviewed the affidavit of merit signed by Frederic Wein, M.D., an expert in gastroenterology.

10.      I affirm that I have personal knowledge of the facts stated in this affidavit.

1

11.     If sworn as a witness, I can testify competently to the facts stated in this affidavit.

12.     Based on my review of this matter, I believe there is a reasonable cause for filing a lawsuit. This opinion and the opinions stated below are based upon the information currently available to me. I reserve the right to modify my opinions as additional information becomes available subsequent to the lawsuit of this matter being filed.

13.     It is my professional opinion that the standard of care applicable to Timothy Frankel, M.D., and Robert O'Rourke, M.D., required them to maintain the standard of care of their peers within the professional community of general surgeons.

14.     It is my professional opinion that the requirements of the standard of care included, but were not limited to, the following:

     a. Upon transfer to AAVA with information and CT results from Fulton County Hospital confirming that Richard suffered from gallbladder inflammation and GI bleed on November 11, 2020, appropriately and timely recognize, diagnose and/or treat signs and symptoms of emergent calculous cholecystitis, GI bleed, and infection;

     b. Upon transfer to AAVA with information and CT results from Fulton County Hospital confirming that Richard suffered from gallbladder inflammation and GI bleed on November 11, 2020, order appropriate testing and perform appropriate procedures;

     c. Prior to discharge on November 19, 2020, perform an emergent cholecystectomy with a drainage of the liver abscess, or, if necessary, refer for emergency surgery and transport by ambulance to another facility that has capability for the surgery;

     d. Keep Richard in-patient at AAVA from November 11, 2020, until after surgery is completed instead of prematurely discharging Richard November 19, 2020, and inform Richard of same; and

     e. Any and all other breaches of the standard of practice or care that may be determined during discovery.

15.     It is my professional opinion that the standard of care was breached in the manner set forth below:

2

a. Upon transfer to AAVA with information and CT results from Fulton County Hospital confirming that Richard suffered from gallbladder inflammation and GI bleed on November 11, 2020, failed to appropriately and timely recognize, diagnose and/or treat signs and symptoms of emergent calculus cholecystitis, GI bleed, and infection;

b. Upon transfer to AAVA with information and CT results from Fulton County Hospital confirming that Richard suffered from gallbladder inflammation and GI bleed on November 11, 2020, failed to order appropriate testing and perform appropriate procedures;

c. Prior to discharge on November 19, 2020, failed to perform an emergent cholecystectomy with a drainage of the liver abscess, or, if necessary, refer for emergency surgery and transport by ambulance to another facility that has capability for the surgery;

d. Failed to keep Richard in-patient at AAVA from November 11, 2020, until after surgery is completed instead of prematurely discharging Richard November 19, 2020, and inform Richard of same; and

e. Any and all other breaches of the standard of practice or care that may be determined during discovery.

16.    It is my professional opinion that the following steps should have been taken to achieve compliance with the applicable standard of care:

a. Upon transfer to AAVA with information and CT results from Fulton County Hospital confirming that Richard suffered from gallbladder inflammation and GI bleed on November 11, 2020, should have appropriately and timely recognized, diagnosed and/or treated signs and symptoms of emergent calculus cholecystitis, GI bleed, and infection;

b. Upon transfer to AAVA with information and CT results from Fulton County Hospital confirming that Richard suffered from gallbladder inflammation and GI bleed on November 11, 2020, should have ordered appropriate testing and performed appropriate procedures;

c. Prior to discharge on November 19, 2020, should have performed an emergent cholecystectomy with a drainage of the liver abscess, or, if necessary, refer for emergency surgery and transport by ambulance to another facility that has capability for the surgery;

3

     d.   Should have kept Richard in-patient at AAVA from November 11, 2020, until after surgery was completed instead of prematurely discharging him. Richard November 19, 2020, and inform Richard of same; and

     e.   Any and all other breaches of the standard of practice or care that may be determined during discovery.

17.    It is further my professional opinion to a reasonable degree of medical certainty that had Dr. Frankel and/or Dr. O'Rourke taken the steps identified in paragraph 15 including, but not limited to continuously evaluating the patient for symptoms of rupture and associated sepsis and GI hemorrhage, ordered an emergent cholecystectomy and/or surgery to remove fluids from the gallbladder, placing a cholecystostomy tube, and refrained from discharging the patient until his clinical condition improved, Mr. Secrest would not have prematurely died.

18.    It is further my professional opinion that as a direct and proximate result of each breach of the standard of care as outlined above, Mr. Secrest expired on December 10, 2020. An autopsy was performed, and the cause of death was listed as acute gastrointestinal hemorrhage associated with ruptured calculous cholecystitis. Accordingly, the plaintiff is entitled to all damages recoverable under the law including, but not limited to, reasonable compensation for the pain and suffering incurred by Mr. Secrest prior to his death; loss of society and companionship suffered by members of his estate; loss of wages and financial support; loss of earnings; all necessary and reasonable medical expenses; and funeral and burial expenses.

19.    The opinions rendered in this affidavit is based on information currently available to me and based on my education, training, and expertise in the field of general surgery and I reserve the right to modify any opinion should additional information become available through the course of discovery.

4

Paul V. Gryska, M.D.

Subscribed and sworn before me on 11/30/22

Notary Public

ss. Barnstable Commonwealth of Massachusetts

My Commission Expires: 8/3/29

HUNTER J OHNMEISS
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
August 03, 2029

5

HUNTER J OHNMEISS
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
August 03, 2029